[Civ. No. 869.   Second Appellate District.—October 14, 1911.]

## JESSIE E. JOHNSTON, Respondent, v. JAMES C. JOHNSTON, Appellant.

DIVORCE—DESERTION—ABSENCE OF CORROBORATION—MEASURE OF SUFFICIENCY REQUIRED.—An action for divorce on the ground of desertion cannot be sustained, where the testimony for the plaintiff in relation thereto is entirely without corroboration. Corroboration of the plaintiff in a divorce action is only sufficient when it is pertinent to some fact or facts which is or are sufficient to support the action, and justify the granting of the decree in plaintiff's favor. It is held that this measure of corroboration has not been satisfied in this case.

ID.—CAUSE OF ACTION FOR WILLFUL FAILURE TO PROVIDE—FINDING UNSUPPORTED.—It is held that the evidence is insufficient to sustain a finding in favor of a cause of action for willful failure of the defendant to provide the plaintiff with the common necessaries of life for more than one year next preceding the commencement of the action; but that the evidence shows, without dispute, that when she left plaintiff he provided for her transportation, and that when she left him the last time, she neither asked nor expected the defendant to contribute to her support.

ID.—DECREE AWARDING SEPARATE PROPERTY TO WIFE—SUPPORT OF FINDING—SUPPOSED EXCLUSIVE FACT—TRIAL WITHOUT OBJECTION—EFFECT OF REVERSAL OF DIVORCE.—Where the evidence in the divorce suit is sufficient to sustain a finding that certain real estate was the separate property of the wife, as against a conflicting claim of the husband, it is held that if that fact had alone appeared in reference to the property, and the case was tried without any objection to the jurisdiction of the court to determine that question, a decree

17 Cal. App.—16

awarding the separate property to the wife would be allowed to stand, notwithstanding a reversal of the judgment granting a divorce.

ID.—SHOWING BY WIFE OF JOINT HOMESTEAD—DECREE RENDERED ERRONEOUS—ENTIRE REVERSAL.—Where the plaintiff in her proof further showed that she and her husband had, long before the commencement of the action, executed a joint declaration of homestead upon her separate property without any showing that the homestead so selected had ever been abandoned or relinquished, the court must be controlled, in such case, by section 146 of the Civil Code, under which the right of the court to make any order determinative of the rights of the parties is dependent upon a decree dissolving the marriage, and where the latter decree is erroneous and must be reversed, the decree awarding the separate property to the wife upon which the homestead was declared was rendered erroneous, and the decree must be reversed in its entirety.

ID.—UNDISSOLVED MARRIAGE—CONTINUANCE OF HOMESTEAD—IMPROPER DECREE QUIETING TITLE.—If the marriage is not dissolved, then the homestead rights of the parties continue undisturbed; and since defendant has a subsisting homestead right in the property involved, a decree determining that plaintiff's title to such property is quieted against all claims of the defendant, and estopping him from setting up any claim thereto, cannot stand.

APPEAL from a judgment of the Superior Court of Los Angeles County.  George R. Davis, Judge.

The facts are stated in the opinion of the court.

Jones & Weller, for Appellant.

G. A. Gibbs, for Respondent.

JAMES, J.—Action for divorce.  Appeal by defendant from the decree entered against him.  In the complaint of plaintiff were set out two causes of action: one for the desertion of her by defendant, and the other for defendant's failure to provide her with the necessaries of life.  Defendant in his answer denied generally the allegations of plaintiff's complaint and on this appeal contends that the evidence heard at the trial is insufficient to support the judgment of the court.

The parties were married in the year 1876 in the county of Los Angeles and lived together until about the year 1887,

when plaintiff left defendant and remained away from him for a great many years, returning again to reside with her husband in 1905. During the interval of her absence she lived with another man as his wife. In September, 1905, defendant was living at a mining settlement called Cactus Flats in California. After it had been arranged that his wife was to return and live with him, the couple went before a magistrate at San Bernardino and a second marriage ceremony was performed, after which they immediately left for Cactus Flats and there took up their abode. In July of the following year, the plaintiff again left the defendant and came to Los Angeles, where she continued to reside up to the time of the commencement and trial of this action. She testified that her husband had paid her traveling expenses when she left him, and the husband testified that he gave his wife a check for $50 at the time of her departure. Plaintiff further testified that defendant was willing that she should go and knew that she never intended to return. As to the cause assigned by her for leaving, we quote her own words as they appear in the transcript of the testimony: "It was his continual accusation of wrong, and another was a continual threat of my life. . . . There was no one there to do wrong with; it was a continual accusation of wrong, and what he was going to do; and if he caught anyone around there, and all this. He carried a shotgun or rifle continuously. I told him if he killed some innocent person it would be a terrible thing; and he said he had a right to kill anybody that came on his place. And on the thirteenth day of May, 1906, he was very angry; I don't know why he should be, but it was always just after the stage left. . . . I told him that he would have to tell me what in the world had made him act so, why he should do so, and I told him I would not stand any such treatment as that; I could not live with anybody and live under those conditions; and that was the first cause of our trouble, years and years ago, when I left him, a continual accusation of something wrong. So he got very angry; he took up the shotgun, dragged me into the front room and pulled the shotgun on me, and I took the shotgun away from him, and he knows it. He says he never threatened to kill me; he knows he said that." The foregoing statement is the substance of all of the material testimony

given by the plaintiff touching the matter of the cause which defendant furnished for her act of leaving him. It will be noted that plaintiff was not specific as to the particular charge which her husband made against her. She did, however, testify to acts of violence committed by him against her person; and if enough corroboration of her testimony is to be found in other evidence furnished at the trial, a sufficient case would be made out to sustain the decree of the court given upon the first cause of action set out in the complaint, to wit, that for desertion. (Civ. Code, sec. 98.) Corroboration of the testimony given by the plaintiff in support of her first cause of action was sought to be shown by an affidavit made by one Anna D. Crain, which was admitted in evidence by stipulation of counsel. The material parts of that affidavit read as follows: ''I know there was a great deal of trouble between the plaintiff and the defendant while I was there, caused by the jealousy of the defendant for the plaintiff which was without any reason; that upon Memorial Day the plaintiff visited my school, and her appearance indicated that she was in great distress of mind and that she had been crying, the same night I went back to the plaintiff's house and stayed all night. Things were in great disorder at her house and I said it looks as though you were going to move, and Mrs. Johnston said: 'Yes, I am going to move because Mr. Johnston is accusing me of things that I am not guilty of,' and this was said in the presence of Mr. Johnston and he did not deny it; he turned and walked away. The next day a party went over to Rose Mine and Mr. Johnston went along and would not converse with anyone unless spoken to and then only in monosyllables, so that it was noticed very much and remarked among the people that something was the matter with him.'' In the main, the statements made in this affidavit were expressions of mere conclusions upon the part of the deponent. It was not shown that the plaintiff in the presence of her husband and Anna D. Crain stated what her husband had accused her of, and nothing at all was said by the plaintiff to Anna D. Crain, so far as the affidavit expresses the things which she did state, about any violence committed by the husband against the wife, or of any threats made by him to injure plaintiff in any way. In our opinion, the testimony given

in support of the cause of action for desertion is entirely without corroboration.    Section 130 of the Civil Code provides that "No divorce can be granted upon the default of the defendant, or upon the uncorroborated statement, admission, or testimony of the parties, . . . "    Attention has been called by counsel for respondent to the case of *Venzke* v. *Venzke,* 94 Cal. 225, [29 Pac. 499], in which it is claimed a condition of evidence parallel to that shown in this case is disclosed.    An examination of the decision referred to, however, does not bear out that contention.    In the Venzke case the ground of extreme cruelty was assigned by the plaintiff, consisting of various alleged harsh conduct indulged in by the defendant there, and upon each of the several items of said charge there. was some specific and direct testimony furnished by witnesses other than the plaintiff herself.    It has been said that corroboration in divorce actions is sufficient if such corroboration is pertinent to "some fact or facts which is or are sufficient to support the action and justify the entry of the decree in plaintiff's favor."    (*Cooper* v. *Cooper,* 88 Cal. 45, [25 Pac. 1062] ; *Matthai* v. *Matthai,* 49 Cal. 90.)    In our view of this case, this measure of corroboration has not been here satisfied.

There was no sufficient evidence to sustain the finding that defendant had willfully failed to provide plaintiff with the common necessaries of life for more than one year preceding the commencement of her action.    Without dispute, it appears in testimony that at the time plaintiff left Cactus Flats in July, 1906, defendant furnished her with the means of transportation, giving her a check for $50, and it nowhere appears by any of the testimony that the plaintiff ever requested or desired any further contribution from him while she remained away from his place of abode.    In fact, every natural inference to be drawn from all the facts and circumstances shown in evidence supports the conclusion that the plaintiff did not require or expect the defendant to contribute to her support after she left him the last time.

In the course of the allegations of plaintiff's complaint it was set up that plaintiff was the owner of certain real property situated at Wilmington in the county of Los Angeles, which was her own separate estate.    She asked for a decree so declaring it to be, and the judgment of the court followed in

accordance with the prayer of the complaint. ~The defendant in his answer denied that the property mentioned was the separate property of the wife, and alleged that the property had been acquired by purchase by him subsequent to his marriage with the plaintiff. Evidence was introduced on the part of plaintiff touching the purchase of this property, which was sufficient to establish the fact, as found by the court, that the land in question was of the separate estate of the wife. However, in the course of the trial, the plaintiff voluntarily showed that in the year 1884 a joint declaration of homestead affecting this property had been duly executed by herself and husband, and no showing was made that this homestead so selected had ever been abandoned or relinquished. If it had not been shown that the character of a homestead had become attached to the property, the decree of the court, having been made without any objection raised to its jurisdiction to make such a decree in this kind of an action, might be sustained and remain undisturbed, notwithstanding the reversal of the judgment for divorce. This court has held that where by cross-complaint in a divorce action conflicting claims to real property are sought to be settled, and no objection is urged by the parties and trial is had, such parties will be precluded thereafter from questioning the jurisdiction of the court to make and enter a judgment affecting issues thus presented. (*Huneke* v. *Huneke*, 12 Cal. App. 199, [107 Pac. 131].) But here the plaintiff in making her proof showed to the court that the property which she claimed as her separate estate was subject to homestead rights created by the joint act of herself and husband, and this fact appearing, the court in the disposition thereof would be controlled by the provisions of section 146, Civil Code. The provisions of that section, in so far as they are material in their application to this case, are as follows: "In case of the dissolution of the marriage by the decree of a court of competent jurisdiction, the community property, and the homestead, shall be assigned as follows: . . . 4. If a homestead has been selected from the separate property of either, it shall be assigned to the former owner of such property, subject to the power of the court to assign it for a limited period to the innocent party." By this section the right of the trial court to make any order or decree which

would be determinative of the interests of the respective parties in the homestead is dependent upon a decree first being made dissolving the marriage. If the marriage is not dissolved, then the homestead rights of the parties continue undisturbed. The decree in this case determines that the plaintiff's title to the real property is quieted against all claims of the defendant, and that the defendant is estopped from setting up any claims thereto. The decree in its entirety must, therefore, be set aside.

The judgment is reversed and the cause remanded for a new trial.

Allen, P. J., and Shaw, J., concurred.